IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

STANLEY GRAEWIN,

    Plaintiff,       OPINION AND ORDER

 v.

                    17-cv-388-bbc

DEPARTMENT OF WORKFORCE
DEVELOPMENT,

    Defendant.

---

  Plaintiff Stanley Graewin is seeking review under Title I of the Rehabilitation Act, 29 U.S.C. § 722(c)(5)(J), of a decision by defendant Department of Workforce Development denying his claim for vocational rehabilitation services. (Although plaintiff was proceeding pro se when he filed his complaint, he is now represented by counsel.) Plaintiff raises the following challenges in his appeal: (1) defendant did not make a determination with respect to his eligibility for vocational rehabilitation services within the time period required by state and federal law; (2) defendant improperly denied plaintiff services related to maintaining his family farm; and (3) defendant did not provide plaintiff an impartial due process hearing when it denied his second appeal. Before the court is defendant's motion for summary judgment with respect to all of plaintiff's claims. Dkt. #17. For the reasons explained below, I am granting defendant's motion for summary judgment and affirming the decision reached below.

  Before laying out the facts, I note that an initial matter deserves attention. Although plaintiff filed an affidavit through his attorney stating his version of events, dkt. #25, he has

not filed a response to defendant's proposed findings of fact or proposed any findings of fact of his own. Instead, he states in his brief that several "material facts are disputed" and then identifies by number the facts that he disputes without explaining what he disputes or citing any admissible evidence to support his contention. The court's procedures for motions for summary judgment, which were attached to the pretrial conference order sent to the parties make clear that plaintiff must "[a]nswer each numbered fact proposed by the moving party in separate paragraphs," stating plaintiff's "version of the fact and refer[ring] to evidence that supports that version." Proc. to be Followed on Mtn. For Summ. Judg., § II.D, dkt. #12 at 11, 15. The procedures also give specific warning to the parties that "[t]he court will not consider any factual propositions made in response to the moving party's proposed facts that are not supported properly and sufficiently by admissible evidence." Id. at 16. Because plaintiff has failed to make any meaningful attempt to comply with these requirements, I have deemed defendant's proposed findings of fact admitted. Abraham v. Washington Group International, Inc., 766 F.3d 735, 737 (7th Cir. 2014) ("[T]his Circuit has routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions."); Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that district court did not err when it deemed defendant's proposed findings of fact admitted and refused to consider additional facts for plaintiff's failure to follow local procedures on proposed findings of fact).

From defendants' proposed findings of fact, I find that the following facts are undisputed.

UNDISPUTED FACTS

A. State Vocational Rehabilitation Services

Plaintiff Stanley Graewin was referred for state-provided vocational rehabilitation services on July 17, 2015. Defendant Department of Workforce Development has eleven regions in the state of Wisconsin that provide employment-related services to people with disabilities, whom defendant refers to as "consumers," through its Division of Vocational Rehabilitation (DVR). DVR's purpose is

> To provide a comprehensive, coordinated, effective, efficient, and accountable vocational rehabilitation program which is
>
> > (a) An integral part of a statewide workforce development system; and
> >
> > (b) Designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice so that they may prepare for and engage in competitive integrated employment and achieve economic self-sufficiency.

Voc. Rehab. Progr. Policy Man. at 1, available at https://dwd.wisconsin.gov/dwd/publications/dvr/pdf/dvr_11074_p.pdf.

Every consumer works with a DVR counselor to establish an individualized plan for employment, which assists the consumer in preparing for, securing, retaining or regaining an employment outcome that is consistent with the strengths, resources, priorities, concerns, abilities, capabilities, interests and informed choice of the consumer. Counselors are responsible for documenting information about consumers in their case record in a computerized software program called "The Integrated Rehabilitation Information System."

Relevant information includes an assessment, diagnosis, plan for employment, progress notes and case closure.

At the time plaintiff applied for services, DVR staff used the "Toolkit for Existing Farms" in working with consumers whose goal was to maintain their existing farm business following disability. The "Self-Employment Business Start-up Toolkit" was used for start-up farms or for existing farmers who sought to change their farm operation. DVR uses the following steps in working with a consumer to maintain an existing farm:

1. Discuss preliminary information about expressed interest in maintaining existing farm;

2. Initial appointments with DVR staff to discuss existing farm and consumer's needs for maintaining the farm;

3. Farm assessment referral and follow-up;

4. Development of individualized plan for employment;

5. Provide services listed in the plan; and

6. Follow-along and closure.

The existing farm toolkit requires a farm to be viable in order to receive rehabilitation technology services and items for maintaining the farm from DVR. Viability refers to the overall financial health of the farming operation. DVR also assesses the consumer's vocational feasibility, or ability, maintain or continue with his goal and informed choice.

DVR requires farm owners to earn at least minimum wage, at either full or part time hours. The median wage for farm and ranch managers in the United States is $30.85 an hour or $64,170 annually. In Wisconsin, the median is an annual income of $67,780, and

even at the lower end of the income scale, Wisconsin farmers earn approximately $36,150 a year. DVR calculates a farmer's wage earnings from his annual taxable income, adding in depreciation expenses and dividing that amount by the number of hours worked for the year. The size of the farm does not factor into the minimum wage calculation. Minimum wage earnings must be shown through tax returns to confirm that the farm is actually a business.

### B. Plaintiff's Application and Eligibility Determination

Plaintiff submitted an application for DVR services on August 4, 2015, claiming that he was self employed as a farmer, worked 48 hours a week and earned no income. During an initial interview on the same day with his DVR counselor, Kristie Lonsdorf, plaintiff reported that he was a fifth generation farmer and had owned dairy, hog and chicken operations at varying points in his life. He reported that he was growing crops primarily, but at some point, the 13 acres of woodland on his property was assessed as recreational land, resulting in a tax increase of $3,000 per year. Plaintiff reported that after he acquired three cows, his property was reassessed as a farm. Around 2012, the wind blew the roof off plaintiff's barn, rendering it unsafe for housing animals. Although plaintiff had already sold all of his hogs, he wanted DVR assistance to buy machinery to remove and relocate the barn debris. Lonsdorf told plaintiff that she needed three years of tax returns, his credit report, a physical capabilities form completed by a medical doctor with signed authorizations and an AgriAbility acceptance letter and financial statement. Plaintiff did not have the tax

5

returns because he had been told by his accountant many years before that he did not need to file one.

On August 6 and 7, 2015, Lonsdorf requested plaintiff's medical records. She also confirmed with DVR management that plaintiff had to submit tax records in order to qualify as an operating farming business and informed plaintiff of this requirement on August 14, 2015. On August 17, 2015, Lonsdorf told plaintiff that he should have a doctor complete a physical capacity form because his medical records from Gunderson Lutheran did not reveal that he had a disabling medical condition. On September 29, 2015, Lonsdorf reviewed plaintiff's additional medical records from Mayo/Franciscan Skemp and determined that plaintiff was not eligible for services because they did not show that he had a disabling medical condition and he had not submitted a physical capacity form from any of his doctors. Lonsdorf closed plaintiff's file but failed to notify plaintiff that he was ineligible for services until after she learned about his request for an appeal on February 23, 2016.

C. Plaintiff's Appeal of Ineligibility Determination

Plaintiff appealed the finding of ineligibility on April 4, 2016. Administrative Law Judge Mark Kaiser held a pre-hearing conference on April 15, 2016, at which plaintiff stated that he also suffers from inflammatory arthritis. Amy Grotzke, the Workforce Development Area 9 Director for the La Crosse, Wisconsin area, stated at the conference that if plaintiff was willing to submit a functional capacity form regarding that condition, she was willing to reevaluate the ineligibility decision. A hearing was set for May 26, 2016.

In early May 2016, Grotzke received a functional capacity form from one of plaintiff's medical providers and left a message for the administrative law judge, stating that plaintiff likely would be found eligible for services and that the hearing was unnecessary. In a letter to plaintiff dated May 10, 2016, the administrative law judge noted that Grotzke had informed him that it was likely that plaintiff would be found eligible for services and scheduled a pre-hearing conference for May 16, 2016. At the pre-hearing conference, Grotzke explained that she could either open a new file for plaintiff or re-open plaintiff's existing file as an "erroneous closure" if plaintiff agreed to a 90-day extension of the deadline for employment planning. Plaintiff requested that his existing file be re-opened and agreed to the 90-day extension. Grotzke agreed to send out an eligibility letter and schedule a meeting with plaintiff right away.

In a letter dated May 16, 2016, Lonsdorf told plaintiff that he had been found eligible for services and that the next step was developing a plan to help him reach his goal. She scheduled an appointment with plaintiff for May 31, 2016. On May 23, 2016, plaintiff filed a letter withdrawing his request for a hearing, and the administrative law judge issued an order cancelling the administrative hearing and dismissing the matter without prejudice.

D. Plaintiff's Farm Assessment and Individualized Plan for Employment

On June 8, 2016, DVR retained the Easter Seals Farm Program to conduct an analysis of plaintiff's farming operation, including the viability and overall financial health and management of the farming operation, a discussion of plaintiff's disability and how it affects

7

certain tasks on the farm and recommended rehabilitation technology. On June 24, 2016, Jeff Kratochwill, a rural rehabilitation specialist with Easter Seals, visited plaintiff's farm and issued his findings to DVR five days later. Kratochwill noted the following:

- Plaintiff intended to re-start his hog business, obtain more beef cattle and build a new barn or shed for the animals.

- Plaintiff wanted to purchase a side-entry-style skid steer to clean up the old barn, help him build a new barn and clean up the farm for use in the feeding and caring of the animals.

- Plaintiff reported living on $868 a month from social security and having no debts other than an annual $2,000 property tax bill, for which monthly payments are deducted from his social security check.

- Plaintiff has not paid taxes since the 1990s because his accountant told him he did not need to if he had no net profit.

- Plaintiff has been unable to secure a loan after checking with several banks.

- Although there may be some disability-related accommodations to help plaintiff operate tractors and move grain in producing crops, plaintiff may not be interested in discussing accommodations for the cropping operation because he had inquired about items that would allow him to start a different business.

On July 7, 2016, Grotzke spoke to plaintiff about the findings of the farm assessment and discussed the next steps. She also re-iterated that DVR could not assist plaintiff with accommodations for the current farm unless he chose to file taxes. On July 20, 2016, Lonsdorf and Grotzke met with plaintiff and Kratochwill to discuss the farm finding report and discussed whether plaintiff wanted to start up his hog business again. If that was his goal, the best option was to cancel the application to the Easter Seals Farm Program and instead proceed through the "Small Business Start-up Toolkit." At the end of the meeting, they agreed that plaintiff could continue to pursue services for an existing farm and

8

Kratochwill would make a referral to the Wisconsin Farm Center for financial counseling related to tax laws before making a final decision on DVR services. Lonsdorf and plaintiff completed an updated individualized plan for employment with a long-term employment goal of "continued work as a farmer." DVR offered plaintiff services through the Farm Center to learn more about tax laws and regulations as they related to his farm business.

On August 16, 2016, Kratochwill visited plaintiff's farm with Michael Lochner from the Wisconsin Farm Center. During the visit, plaintiff provided receipts showing that he had earned $5,211.02 in 2015 and $4,151.19 in 2016. On August 23, 2016, Lochner informed DVR of plaintiff's 2015 income. Because plaintiff was an individual making less than $10,950 per year, he was not required to file tax returns.

Relying on the Easter Seals Assessment and plaintiff's annual income of $5,211.50, DVR determined that plaintiff's crop farming operation was not viable because plaintiff earned well under minimum wage even assuming he worked half-time hours (1,040 hours a year). DVR sent plaintiff a letter on September 16, 2016, advising him that he did not qualify for accommodations to continue crop farming because his crop farm was not considered a viable business. The letter outlined other options for plaintiff, including using the small business startup toolkit and a benefits analysis. Plaintiff told Lonsdorf on October 10, 2016 that he would rather "push for help" than write a small business plan.

E. <u>Plaintiff's Appeal of Viability Decision</u>

On December 28 2016, plaintiff filed an appeal of the September 2016 decision denying him services. On January 18, 2017, Administrative law Judge McCombs held a pretrial conference, which plaintiff and Grotzke attended, and scheduled a hearing for February 22, 2017 in Sparta, Wisconsin. In an email to the administrative law judge dated February 14, 2017, Grotzke objected to certain exhibits proposed by plaintiff. The administrative law judge instructed Grotzke by email to print and mail a copy of the email to plaintiff. Grotzke did not have any further ex parte communication with the administrative law judge.

At the February 22, 2017 hearing, plaintiff admitted that he had not and does not need to file taxes on any income from his farm and that he had not earned any more income in 2016 than he reported during the August 2016 visit with Lochner. In a written decision entered on March 24, 2017, the administrative law judge affirmed DVR's denial of plaintiff's request for rehabilitation technology services and financial contribution to maintaining his farming operation, concluding that DVR appropriately found that plaintiff's farm is not viable and would not provide gainful employment. Plaintiff filed a petition for a rehearing on April 12, 2017, which the administrative law judge denied.
Throughout 2017, plaintiff did not respond to DVR's offers of alternative services.

OPINION

A. Legal Standard

Defendant contends and plaintiff has not disputed that in reviewing a decision by an impartial hearing officer of an administrative agency under 29 U.S.C. § 722(c)(5)(J), courts apply a modified de novo standard of review, independently determining the legal issues decided by the agency while giving substantial deference to the agency's policy views and factual determinations. Wasser v. NewYork State Office of Vocational & Educational Services for Individuals with Disabilities, 602 F.3d 476, 477 (2d Cir. 2010) (per curiam); Yochim v. Gargano, 882 F. Supp. 2d 1068, 1077 (S.D. Ind. 2012); Schmidt v. Division of Vocational Rehabilitation WDA Milwaukee County, 2012 WL 462954, at *3 (E.D. Wis. Feb. 13, 2012), aff'd 502 Fed. Appx. 612 (7th Cir. 2013). See also Rance v. Florida Department of Education, 2011 WL 1099262 *7 (S.D. Fla. Mar. 22, 2011) (The standard is "more deferential than de novo review, and requires the district court to refrain from substituting its own notions of sound policy for those of state authorities."). The court makes its determination based upon a preponderance of the evidence. Yochim, 882 F. Supp. 2d at 1078 (citations omitted).

B. Plaintiff's Appeal

Plaintiff raises the following challenges in his appeal: (1) defendant did not make a determination with respect to his eligibility for vocational rehabilitation services within the time period required by state and federal law; (2) defendant improperly denied plaintiff

services related to maintaining his family farm; and (3) defendant did not provide plaintiff an impartial due process hearing in denying plaintiff's second appeal on February 22, 2017. I will discuss each challenge separately.

1. Untimely eligibility decision

Plaintiff contends that defendant violated the Rehabilitation Act when it did not inform plaintiff for 241 days that it found him ineligible for services. Regulations implementing the Act provide that "[o]nce an individual has submitted an application for vocational rehabilitation services . . . an eligibility determination must be made within 60 days, unless . . . [e]xceptional and unforeseen circumstances beyond the control of the designated State unit preclude making an eligibility determination within 60 days and the designated State unit and the individual agree to a specific extension of time." 34 C.F.R. § 361.41(b). In this case, the undisputed facts show that plaintiff applied for benefits on August 4, 2015, and Lonsdorf found plaintiff ineligible for services 57 days later, on September 29, 2015. Although 34 C.F.R. § 361.43(b) requires the state to "[i]nform the individual in writing . . . of the ineligibility determination," it does not set a specific deadline for doing so. Therefore, plaintiff has not shown that defendant violated any procedure required by the Rehabilitation Act.

However, even if I were to assume that defendant violated the regulations in failing to notify plaintiff of his ineligibility status until March 2016, plaintiff has not shown that he was harmed by any such procedural violation. Lonsdorf found that plaintiff was not eligible

12

for services because his medical records did not show that he had a disability that prevented him from working. Although there was a delay because of the late notification, plaintiff had the opportunity to appeal that decision. When plaintiff informed the administrative law judge and Grotzke at a pre-hearing conference that he also suffered from inflammatory arthritis, Grotzke agreed to reevaluate the ineligibility decision if plaintiff submitted a functional capacity form from his physician. After receiving that form, Grotzke determined that plaintiff was eligible for services and, with plaintiff's consent, re-opened his file so the agency could proceed to the next phase—developing an individualized plan for employment for plaintiff and identifying resources necessary to achieve his goals. Therefore, any procedural irregularity associated with defendant's failure to notify plaintiff of his eligibility for services did not result in any harm that entitles him to relief under the Act. Diamond v. Michigan, 431 F.3d 262, 267 (6th Cir. 2005) ("Because [plaintiff] cannot demonstrate any substantive harm, she is not entitled to any relief under the Act for a possible procedural violation."); LaFleur v. South Dakota Department of Human Services, 2007 WL 1447734, at *5 (D.S.D. May 10, 2007) (plaintiff not entitled to relief because he failed to present evidence that defendant's failure to provide timely notice of eligibility status had any effect on whether he received services). Although plaintiff did not end up receiving financial assistance for an existing farm as he had hoped, that decision was completely separate from the initial eligibility decision and the subject of a separate appeal.

2. Improper denial of assistance in maintaining farm

Plaintiff makes a few brief arguments challenging defendant's decision to deny him financial assistance in maintaining his farm, but he has failed to show why that decision should be reversed. First, plaintiff contends that defendant "induced him" to withdraw his appeal in May 2016 by telling the administrative law judge that DVR would find him eligible and work to achieve plaintiff's job goal, but then turned around and informed him that even though he was eligible for services, his request for continued employment on the farm would be denied. However, as discussed above, whether plaintiff had a disability that made him eligible for services and whether his farm was sufficiently viable to provide competitive employment involve two different decisions that were the subjects of two separate appeals. The undisputed facts show that after plaintiff provided defendant medical evidence of his disability in May 2016, defendant reversed its eligibility decision, prompting the dismissal of plaintiff's appeal. On May 23, 2016, the administrative law judge entered an order dismissing the appeal without prejudice. Although plaintiff seems to believe that defendant ignored the administrative law judge's order in later finding that he could not receive financial assistance for his farm, the May 23 order dismissed only the appeal and did not direct defendant to provide plaintiff any particular type of services.

Second, plaintiff argues that defendant's assessment that he wanted to start a new business or change his business direction is false because he always wanted to continue his hog farm. However, at the time plaintiff applied for services and was developing his employment plan, he did not own any animals because he had sold them after the barn roof was destroyed in 2012. Moreover, plaintiff has not presented any evidence showing that he

14

stopped his hog farm operation because of his disability. In 2016, defendant arranged for an analysis of plaintiff's existing farming operation, which was limited to the growing of some crops. The analysis showed that plaintiff's farm was not viable because plaintiff had not been earning a minimum wage at even half-time hours for the preceding two years. During a meeting with plaintiff on July 20, 2016, Lonsdorf and Grotzke discussed with plaintiff whether he wanted to start up his hog business again and told him that if that was his goal, the best option was to cancel the application to the Easter Seals Farm Program and proceed using the small business start-up toolkit. Although plaintiff disagrees with this approach, he has failed to explain how doing so would have violated the Rehabilitation Act or how defendant erred in trying to help him.

3. <u>Unfair hearing</u>

Plaintiff generally asserts that Administrative Law Judge McCombs did not provide him a fair hearing on February 22, 2017 because McCombs enagaged in an ex parte discussion with Grotzke before the hearing. In support of this contention, plaintiff cites his declaration, in which he avers that he walked into the hearing room to find Grotzke and the administrative law judge discussing his case and that the administrative law judge did not give any weight to the evidence that plaintiff presented. Dkt. #25 at ¶ 12. However, plaintiff fails to explain in his declaration or his brief in response to defendant's motion for summary judgment what the administrative law judge and Grotzke were discussing, how it was relevant to his case or to the resulting decision and what evidence the administrative law judge should

15

have given more weight. Grotzke admits that she sent an ex parte email to the administrative law judge objecting to some of plaintiff's exhibits, but the administrative law judge instructed her to send plaintiff a copy of the communication immediately and she did.

In sum, plaintiff was provided the opportunity to file an appeal, submit his concerns in writing, file exhibits and testify at a hearing held before an administrative law judge. Dkt. #19, exh. ##4 and 5. A review of the administrative law judge's written decision reveals that he reviewed all of the evidence before him, including the exhibits submitted by plaintiff and defendant and plaintiff's testimony at the hearing, and reasonably concluded that defendant did not err in reaching its decision with respect to the viability of plaintiff's farm. Dkt. #19, exh. #2 at 4-7. Although defendant objected to some of plaintiff's exhibits as irrelevant to the viability of his farm, the administrative law judge insured that plaintiff knew about those objections and had an opportunity to respond to them. Without more than plaintiff's conclusory allegations that the administrative law judge was impartial or unfair, there is no basis upon which I can conclude than plaintiff was deprived of a fair hearing and appeal. <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) (due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" and opportunity to be heard).

ORDER

IT IS ORDERED that defendant Department of Workforce Development's motion for summary judgment, dkt. #17, is GRANTED. Plaintiff Stanley Graewin's appeal of

defendant's decision finding plaintiff ineligible for certain vocational rehabilitation services is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 24th day of July, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge